JDN

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Paul Anthony Robledo,

Plaintiff,

v.

Unknown Bautista, et al.,

Defendants.

No.  CV 19-05349-PHX-JAT (DMF)

**ORDER**

Plaintiff Paul Anthony Robledo, who is currently confined in the Arizona State Prison Complex (ASPC)-Lewis, Bachman Unit, brought this pro se civil rights action under 42 U.S.C. § 1983 against Correctional Officer (CO) Jeanelle Bautista and Trinity Service Group (Trinity), the private company contracted with the Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) to provide meal service to prisoners. (Doc. 13.)  Before the Court are Defendants' separate Motions for Summary Judgment. (Docs. 187, 242.)  The Court will grant Defendant Bautista's Motion and deny Defendant Trinity's Motion without prejudice.

## I.    Background

In Count Two of his Third Amended Complaint, Plaintiff asserted a freedom of speech claim against Defendant Bautista, who was the mail and property CO II.  (Doc. 13 at 5.)  Plaintiff alleged that when incoming mail is confiscated, the only avenue for appeal is for the prisoner to file an appeal to the Complex Office of Publication Review by submitting an inmate letter within 30 days of receiving notice of the confiscation.  Plaintiff

alleged that in March 2019, Defendant Bautista confiscated a piece of Plaintiff's mail, and when Plaintiff submitted an appeal request of that confiscation, Bautista opened it, read it, and responded to the appeal herself, thereby censoring and stifling Plaintiff's attempt to appeal to the Lewis Complex Office of Publication Review.  (*Id.*)

In Count Three, Plaintiff alleged that Defendant Trinity has a policy and custom of providing Plaintiff with an insufficient diet and, as a result, he has been diagnosed with vitamin B12 deficiency anemia, and he is at risk of developing serious health problems.  (*Id.* at 7–9.)

On screening, the Court determined that Plaintiff sufficiently stated a procedural due process claim against Defendant Bautista in Count Two and an Eighth Amendment conditions-of-confinement claim against Defendant Trinity in Count Three.  (Doc. 14 at 6.)  The remaining Counts were dismissed.  (*Id.*)

Defendant Bautista moves for summary judgment on the grounds that (1) Bautista followed ADCRR policies that prohibit material that does not come from an authorized publisher; (2) at most, Bautista made a mistake, which does not rise to a constitutional violation; (3) Bautista is entitled to qualified immunity; and (4) Plaintiff is only entitled to nominal damages.  (Doc. 187.)

Defendant Trinity moves for summary judgment on the grounds that (1) Plaintiff cannot establish either the objective prong or the subjective prong of an Eighth Amendment claim; (2) Plaintiff cannot meet the requirements of *Monell*; (3) Trinity is shielded from liability by qualified immunity and the good faith defense; and (4) Plaintiff is not entitled to punitive damages.  (Doc. 242.)[1]

## II.    Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Upon the filing of each of Defendants' Motions for Summary Judgment, the Court issued Orders with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998) (en banc), which informed Plaintiff of the requirements under Federal Rule of Civil Procedure 56 and set briefing schedules for each Motion.  (Docs. 189, 244.)

Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3). Where the nonmovant is a pro se litigant, the court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.   Count Two—Procedural Due Process Claim

### A.   Relevant Facts

On March 14, 2019, Defendant Bautista, in her position as the Property and Mail

Officer, was sorting through incoming mail at the ASPC-Lewis, Barchey Unit.  (Doc. 188 ¶ 28.)  The incoming mail included a letter addressed to Plaintiff.  (*Id.* ¶ 29.)  Defendant Bautista confiscated a one-page document included with the letter on the ground that it violated ADCRR's policy against sexually explicit content.  (Doc. 13 at 3, 5.)  Plaintiff asserts that the confiscated page was an advertisement with a picture of models in swimsuits.  (*Id.* at 4.)

Upon confiscating the page from Plaintiff's incoming mail, Defendant Bautista filled out an Inmate Property/Contraband/Disposition Tracking form and sent it to Plaintiff.  (Doc. 188 ¶ 31; Doc. 188-1 at 76.)  The form informed Plaintiff that a page from his incoming mail had been seized as contraband because it was sexually explicit pursuant to Department Order (DO) 914 § 7.1.  (Doc. 188 ¶ 32; Doc. 188-1 at 76.)  Under DO 914 § 7.1, prisoners are not permitted to send, receive, or possess sexually explicit material or content that is detrimental to the safe and orderly operation of the prison.  (Doc. 188-1 at 69, DO § 914 7.1.)  On the face of the form, prisoners are informed of their options as to what to do with the confiscated item; the prisoner may (1) opt to donate the item to the prison, (2) have the item destroyed, (3) have the item held pending an appeal, or (4) have the item sent to someone else.  (Doc. 188-1 at 76.)  The forms states that the third option— to have the item held pending an appeal—applies only for publications that are excluded under DO 914, which is the policy governing prisoner mail.  (*Id.*)  If this option is chosen, the prisoner must timely submit an Inmate Letter to initiate the appeal process in accordance with DO 914.  (*Id.*)  Under DO 914, a prisoner may request an appeal to the complex Publication Review staff by filing an Inmate Letter within 30 calendar days of receipt of the notice of exclusion.  (*Id.* at 72, DO 914 § 8.2.2.1.)

Defendant Bautista indicated on the form that a page from Plaintiff's incoming mail was confiscated in accordance with DO 914, Inmate Mail, and that the item seized was given "Contraband Control Number L25-19, 49."  (*Id.* at 76.)  Plaintiff chose to submit an appeal.  (*See id.*)  The next day, March 15, 2019, Plaintiff submitted an Inmate Letter to the Office of Publication Review, in which he wrote:

> Pursuant to DO 914 § 8.2.2.1, I hereby submit my appeal of the publication seizure (contraband control # L25-19-49) by CO II Bautista (#10575) on 3-14-2019 at ASPC-Lewis-Barchey Unit.

(Doc. 188-1 at 78.)   Under DO 914, when an appeal is submitted to the Office of Publication Review, that office may uphold the complex exclusion, overturn the complex exclusion, or allow the publication but redact a part of the unauthorized content.  (*Id.* at 73, DO 914 § 8.2.2.4.)  The appeal decision made by the Office of Publication Review is final.  (*Id.*, DO 914 § 8.2.2.5.)

Plaintiff's appeal did not go to the Office of Publication Review.  Instead, Defendant Bautista responded to Plaintiff's Inmate Letter by writing on the Inmate Letter, "Letters are not subject to publication review.  DO 914 - 6.1 & DO 914 - 7.1." (*Id.* at 78.)  Defendant Bautista returned the Inmate Letter to Plaintiff on March 19, 2019.  (Doc. 188 ¶ 38.)

Upon receipt of Defendant Bautista's response, Plaintiff initiated the prison's grievance process to complain that Defendant Bautista answered an Inmate Letter that he addressed to the Office of Publication Review.   (Doc. 218 ¶ 39(b); Doc. 218 at 22.)  Plaintiff ultimately appealed his grievance up to the Director's office, which, on April 26, 2019, responded:

> After following up with the Office of Publication Review, it was determined the inmate letter and document should have been forwarded for review.  Furthermore, you should have been given the opportunity to appeal any decision as outlined in Department policy.

(Doc. 218 at 22.)

In a second grievance, Plaintiff complained that Defendant Bautista did not give him the opportunity to appeal an exclusion to the Office of Publication and that the confiscated page he wanted to appeal was misplaced by Defendant Bautista.  (*Id.* at 23.)  In its May 1, 2019 response, the Director's office responded:

> Department policy requires that the page in question should still have the opportunity to be reviewed by the Office of Publication Review.  The Unit Administration will be notified to review Department policy appropriately.

(*Id.* at 23.)

In October 2019, Plaintiff initiated this lawsuit.  (Doc. 1.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B. Legal Standard

Prisoners have a liberty interest in sending and receiving mail, and therefore they are entitled to some procedural due process when they are deprived of that mail. *See Krug v. Lutz*, 329 F.3d 692, 696–97 (9th Cir. 2003) (a prisoner "has a liberty interest in the receipt of his subscription mailings sufficient to trigger procedural due process guarantees"); *Procunier v. Martinez*, 416 US. 396, 418–19 (1974) ("[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment [and] is protected from arbitrary governmental invasion"), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Generally, when seizing a prisoner's mail, three baseline protections must be afforded: (1) notice to the prisoner of the rejection, (2) a reasonable opportunity to appeal the rejection, and (3) review by an independent official. *See Martinez*, 416 U.S. at 418–19; *Krug*, 329 F.3d at 697; *Frost v. Symington*, 197 F.3d 348, 353 (1999). The Ninth Circuit has held, however, that neither "mere negligence" on the part of prison officials, nor "random and unauthorized acts" are actionable as a due process violation under § 1983. *Sorrels v. McKee*, 290 F.3d 965, 972 (9th Cir. 2002) (citing *Daniels v. Williams*, 474 U.S. 327, 330–31, 328 (1986), and *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)). Instead, to support a due process violation, the deprivation must be "caused by conduct pursuant to established state procedure[.]" *Id.* (citing *Hudson*, 468 U.S. at 532).

### C. Analysis

There is no dispute that Plaintiff was given notice that a page was confiscated from his incoming mail. The evidence shows that Plaintiff attempted to appeal via an Inmate Letter, in accordance with the applicable policy, DO 914. But Defendant Bautista did not forward Plaintiff's appeal to the Office of Publication Review and, instead, she denied Plaintiff's request for an appeal. Thus, Plaintiff was denied a reasonable opportunity to

appeal the rejection, and he was denied a review by an independent official.  This record supports that Plaintiff was denied the baseline procedural due process protections.

In her Motion, Defendant Bautista first argues that the excluded page from Plaintiff's incoming mail was not a publication because it did not come directly from an authorized vendor, and "[o]nly decisions that withhold publications can be appealed." (Doc. 187 at 8, citing DO 914 §§ 6.4, 8.1, 8.2.)  Defendant Bautista maintains that, consequently, she acted pursuant to a constitutional prison policy when she informed Plaintiff that he could not appeal the confiscation.  (*Id.*)

As Plaintiff points out, this purported reason as to why Plaintiff could not appeal is different than the reason Defendant Bautista provided when she responded to Plaintiff's Inmate Letter, which was that "letters are not subject to publication review," and she originally cited different sections within DO 914—§§ 6.1 and 7.1—to support the confiscation.  Defendant Bautista cannot go back now and deny Plaintiff's appeal on procedural grounds that were not raised at the time.

More importantly, Defendant Bautista's assertion—that only decisions to withhold publications can be appealed—is contradicted by the prison's mail policy.  Under § 2.10 of DO 914, newspaper clippings, magazine articles, cartoons, or copies of material from the internet may be enclosed within personal mail; however, the content of that enclosed material "is subject to the Publication Review process," which is the appeal process.  (*Id.* at 61, DO 914 §§ 2.10, 8.0.)  In her Motion, Defendant Bautista refers to the document that was confiscated as a "magazine clipping" and as an "advertisement flier/page."  (Doc. 187 at 1, 4.)[2]  Pursuant to § 2.10, the confiscated document was subject to the Publication Review appeal process.

This conclusion is confirmed by the Director's responses to Plaintiff's subsequent grievances about Defendant Bautista's action.  In two grievance appeal responses on the issue, the Director's office expressly stated that, under the applicable department policy,

---

[2] The confiscated document is not part of the record because, according to the grievance documents, Defendant Bautista misplaced or lost the document.  (Doc. 218 at 23.)

1   Plaintiff's Inmate Letter and the confiscated document should have been forwarded for
2   review, and Plaintiff should have had the opportunity to appeal to the Office of Publication
3   Review.  (*Id.* at 22–23.)

4          Accordingly, Defendant Bautista's claim that Plaintiff was not entitled to appeal the
5   confiscated document, is unavailing and fails to support summary judgment.

6          Alternatively, Defendant Bautista argues that she was incorrect in failing to permit
7   Plaintiff to appeal the confiscation, but that this amounts at most to a mistake or negligence,
8   which is not a constitutional violation.  (Doc. 187 at 9.)  As stated, negligence on the part
9   of an employee is insufficient to support a due process claim.  *See Sorrels*, 290 F.3d at
10  972–73; *see also Daniels*, 474 U.S. at 333–34 (negligence cannot support a procedural due
11  process claim).  Plaintiff must show that the deprivation was caused by conduct pursuant
12  to established state procedure.  *See Sorrels*, 290 F.3d at 972; *see also Krug*, 329 F.3d at
13  693, 699 (in a challenge to the prison's practice of having a prisoner's appeal of an
14  exclusion decision adjudicated by the same prison official who made the initial decision to
15  exclude the publication, finding that the plaintiff had a procedural due process right to have
16  the exclusion decision reviewed by a prison official other than the one who made the initial
17  decision and upholding the district court's order that prison officials retract any internal
18  procedures inconsistent with this right).

19         The evidence shows that Defendant Bautista's action in denying Plaintiff's Inmate
20  Letter and preventing him from appealing the confiscation was contrary to department
21  policy and procedure.   The Director's grievance appeal responses referred to staff
22  misconduct and a confidential investigation, and informed Plaintiff that the Unit
23  Administration would be notified to review department policy.  (Doc. 218 at 22–23.)  Thus,
24  prison administrators did not condone Defendant Bautista's conduct; they expressly found
25  that she did not act pursuant to policy, and a policy review was therefore required.  Further,
26  Plaintiff makes no allegations that Defendant Bautista or other prison officials routinely
27  confiscated incoming documents and denied appeals such that their actions could be
28  construed as part of an unwritten policy or custom.  (*See* Doc. 217.)

In sum, the record supports that Defendant Bautista's action in confiscating Plaintiff's incoming document and denying him an opportunity for an appeal and independent review was not pursuant to any established state or department procedure; rather, it constituted negligence, incompetence, or a mistake, none of which support a due process violation.  For this reason, Defendant Bautista's Motion for Summary Judgment will be granted, and the Court need not address Bautista's remaining arguments.

## IV.  Count Three—Conditions-of-Confinement Claim

### A.  Relevant Facts

Plaintiff has been in custody of the ADCRR since 2010.[3]  Plaintiff alleges that the meals provided by Defendant Trinity are lacking in nutrients, particularly vitamin B12, and are inadequate to maintain health.  (Doc. 13 at 7.)  Plaintiff asserts that, as a result of the insufficient diet, he has developed vitamin B12 deficiency anemia.  (Doc. 13 at 9.)

Plaintiff's prison medical records show that in October 2019, he was diagnosed with "vitamin B12 deficiency anemia, unspecified," and in November 2019, he was diagnosed with "other dietary vitamin B12 deficiency anemia," which is documented as "due to dietary cause" and is listed as a chronic condition.  (*Id.* at 16.)  Plaintiff must undergo blood tests every six months, and he receives monthly vitamin B12 shots.  (Doc. 246-1 ¶ 11(b); Doc. 243-2 at 5, Pl. Dep. 78:1–6, May 5, 2022.)  Plaintiff avers that he suffers lethargy. (Doc. 246 at 4.)  The monthly vitamin B12 shots, which he has received since November 2019, improve his symptoms for two to three weeks, until they wear off.  (Doc. 243-2 at 5, Pl. Dep. 79:21–80:7, 80:20-25.)

### B.  Legal Standard

To prevail on a claim against a private entity serving a traditional public function, a plaintiff must meet the test articulated in *Monell v. Department of Social Services*.  436

---

[3]  The Court takes judicial notice of the ADCRR website, https://corrections.az.gov/public-resources/inmate-datasearch (last visited Dec. 27, 2022). *See Holifield v. UNUM Life Ins. Co. of Am.*, 640 F. Supp. 2d 1224, 1234 n.8 (C.D. Cal. 2009) (finding it appropriate to take judicial notice of materials and publications from the CDC website); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (government agency websites are often treated as proper subjects for judicial notice) (citing cases).

U.S. 658, 690–94 (1978); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law).  The plaintiff must show that an official policy or custom caused the constitutional violation.  *Monell*, 436 U.S. at 694.  To make this showing, the plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) the public entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation.  *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

### C.    Analysis

#### 1.    Constitutional Violation

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  *Morgan*, 465 F.3d at 1045.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *See Farmer*, 511 U.S. at 832; *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

To state an Eighth Amendment claim, a plaintiff must meet a two-part test.  First, the plaintiff must make an "objective" showing that the alleged deprivation is "sufficiently serious."  *Farmer*, 511 U.S. at 834.  To be sufficiently serious to form the basis of an Eighth Amendment violation, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Id.* (citing *Rhodes*, 452 U.S. at 347).  Second, the plaintiff must make a "subjective" showing that the prison official acted with a "sufficiently culpable state of mind"; that is, that the defendant acted with deliberate indifference to the plaintiff's health or safety.  *Farmer*, 511 U.S. at 834.  To show deliberate

indifference, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to prisoner health or safety. *Id.* at 837. To satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's health or safety. *Id.* at 835.

Prison officials may avoid Eighth Amendment liability for the harm suffered by a prisoner if they show that: (1) "they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) they responded reasonably to the risk. *Id.* at 844.

"Adequate food is a basic human need protected by the Eighth Amendment." *Keenan*, 83 F.3d at 1091. Prisoners must be provided food that is nutritionally adequate to maintain health. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). "[I]nmates rely on prison officials to provide them with adequate sustenance on a daily basis[,]" and "[t]he repeated and unjustified failure to do so amounts to a serious deprivation." *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009). Whether food is sufficient to maintain health is often determined by its nutritional and caloric values. *See Florer v. Bales-Johnson,* 752 F. Supp. 2d 1185, 1200–01 (W.D. Wash. 2010) (finding that, in light of the prisoner-plaintiff's body weight and caloric needs, the prison's kosher meals, which provided an average of 2,380–2,910 calories per day, were sufficient to maintain his health); *see also Green v. Ferrell*, 801 F.2d 765, 770–71 (5th Cir. 1986) (finding two meals a day sufficient if nutritionally and calorically adequate).

### a.     Objective Prong

Defendant Trinity argues that Plaintiff cannot satisfy the objective prong because he has not shown that he suffered an objectively, sufficiently serious injury. (Doc. 243 at 7-8.) Defendant Trinity contends that Plaintiff's symptoms constitute, at most, de minimis

injuries that are insufficient to support an Eighth Amendment claim, and Plaintiff cannot show an affirmative link between any injury and Trinity's conduct absent expert evidence. (*Id.* at 8.)

An Eighth Amendment conditions-of-confinement claim "does not require an allegation of injury that is more than de minimis." *Fields v. Ruiz*, No. 1:03-CV-6364-OWW DLB-P, 2007 WL 1821469, at *7 (E.D. Cal. June 25, 2007). In a conditions-of-confinement claim, the objective prong looks at whether "the deprivation alleged" is "sufficiently serious." *Farmer*, 511 U.S. at 834. The issue is the nature of the deprivation, not the injury. *Fields*, 2007 WL 1821469, at *7. Plaintiff is therefore not required to establish more than a de minimis injury to sustain his Eighth Amendment conditions-of-confinement claim. Even so, Plaintiff presents medical record evidence showing that he has been diagnosed with vitamin B12 deficiency anemia that is serious enough to constitute a chronic condition. (Doc. 13 at 16.) Plaintiff also alleges that he suffers lethargy and must receive vitamin B12 shots once a month, which is not insignificant. (*Id.* at 7; Doc. 246 at 4.) *See S. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1070 (C.D. Cal. 2005) (a declarant has personal knowledge of his or her own symptoms).

Courts have concluded that expert testimony is not mandatory to prove a deliberate indifference claim under the Eighth Amendment standard; at least in some cases, a layperson can adequately understand the evidence such that expert testimony is not required. *See, e.g.*, *Sanders v. York*, 446 F. App'x 40, 43 (9th Cir. 2011) (deliberate indifference claim did not require expert testimony); *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010). "Proximate cause is a question to be decided by a jury[.]" *Gayton*, 593 F.3d at 624. In denying Plaintiff's prior Motion for Court Appointed Expert Witness in Count III, the Court determined that there was no showing that the issues in this case were so complex that an expert was necessary to assist the trier of fact. (Doc. 99 at 5.)[4] In light

---

[4] Defendant Trinity opposed Plaintiff's Motion for Court Appointed Expert Witness in Count III on the ground that an expert was unnecessary. (Doc. 81.)

of medical records documenting that Plaintiff has "vitamin B12 deficiency anemia *due to dietary causes*," and evidence showing that Plaintiff suffers lethargy and requires monthly vitamin B12 shots, a reasonable jury could infer that the diet provided by Defendant Trinity was inadequate to maintain sufficient vitamin B12 levels and Plaintiff suffered harm.  (Doc. 13 at 7 (emphasis added).)  *See Foster*, 554 F.3d at 813 n.2 (finding that, in light of the plaintiff's allegations that he lost weight and suffered headaches during the 23 days he was denied meals, the only reasonable inference was that the meals provided were inadequate to maintain health and the prisoner suffered harm under the Eighth Amendment).

Defendant Trinity next argues that Plaintiff cannot satisfy the objective prong because he received a nutritionally sufficient amount of vitamin B12 in his diet "per all applicable authority and protocols." (Doc. 242 at 8.)  In support, Defendant Trinity submits the declaration of Laura Donnelly, a Trinity dietician, who avers that Trinity provides food service in accordance with ADCRR policies and the ADCRR's Diet Reference Manual, and that the meals provided to Plaintiff meet or exceed the recommended nutritional standard specified by Recommended Dietary Allowances from the National Academy of Sciences, published in 1989, and as required by the "contract parameters." (Doc. 243-1 at 4, Donnelly Decl. ¶¶ 11–12.)[5]  Donnelly avers that Plaintiff received a seven-day average of 2.0 µg/day of B12 a day, calculated over a 6-week period of time, which is a nutritionally adequate diet for incarcerated adults according to the National Institute of Health (NIH) Estimated Average Intakes.  (*Id.* ¶¶ 14–15.)

Donnelly's declaration is too vague to show that the meals served to Plaintiff were nutritionally adequate.  As stated, whether food is sufficient to maintain health is often determined by its nutritional and caloric values, yet Defendant Trinity does not proffer any evidence to show the actual nutritional value of the diet served to Plaintiff.  *See Florer*, 752 F. Supp. 2d at 1200–01.  Donnelly's declaration is not supported by any copies of

---

[5] Plaintiff argues that Donnelly's declaration should be suppressed because the declaration is not notarized or signed pursuant to 28 U.S.C. § 1746 under penalty of perjury. (Doc. 246 at 7.) In her declaration, Donnelly "declare[d] under penalty of perjury that the foregoing declaration is true and correct . . . ." (Doc. 243-1 at 6.) This declaration is sufficient even without citation to the statute.

Defendant Trinity's menus and meals and their nutritional value.  (*See* Doc. 243-1.)  Nor does Defendant Trinity provide any evidence of the "authority and protocols" on which Donnelly's declaration relies; there are no documents from the NIH or the National Academy of Sciences, and there are no copies of the ADCRR Diet Reference Manual or the referenced "contract parameters."  (*See id.*)  *See* Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56, advisory comm. note to 2010 amendments ("[m]aterials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record").  On this record, Defendant Trinity fails to meet its initial evidentiary burden to show that Plaintiff was provided with meals that met nutritional requirements for vitamin B12, and there exists a question of fact as to the objective prong.

If the summary judgment movant fails to meet its initial burden of production, the opposing party need not respond or produce anything.  *Nissan Fire*, 210 F.3d at 1102–03.  The Court notes, however, that Plaintiff responded by producing some of the evidence absent from Defendant Trinity's Motion.  Plaintiff submits a printout from the NIH website, titled Vitamin B12 Fact Sheet for Health Professionals.  (Doc. 246-1 at 113–122.)  This printout shows that the NIH's recommended dietary allowance for vitamin B12 for adults over 19 years old is 2.4 µg/day, not 2.0 µg/day.  (*Id.* at 113–114.)[6]  Plaintiff argues that Defendant Trinity relies on outdated recommended dietary allowances, published in 1989, and that, as evidenced by his NIH printout, the recommended dietary allowances have evolved and currently recommend 2.4 µg/day of vitamin B12.  (Doc. 246-1 at 2, 6, 113–122.)

Defendant Trinity contends that "there is no competent record evidence of what the 'most current' R.D.A.'s [Recommended Dietary Allowance] for Vitamin B12 are, much less that they apply in any way in this case."  (Doc. 248 at 4.)  Defendant Trinity appears

---

[6] Defendant Trinity argues that this printout is not "proper expert evidence" and should be excluded under Federal Rule of Evidence 702, which governs testimony by expert witnesses.  (Doc. 248 at 2.)  As stated, expert testimony is not required; thus, the NIH printout is not part of expert testimony and is not governed by Rule 702.  Defendant Trinity does not provide any specific objection to Plaintiff's printout evidence, nor does it dispute that the printout is from the NIH website and is publicly available.  The Court may take judicial notice of government agency websites.  *See* supra n.3.

to dispute that the recommended dietary allowance for vitamin B12 is 2.4 µg/day, yet it does not present any evidence from the NIH or the National Academy of Sciences to counter Plaintiff's evidence of the recommended dietary allowance.  Contrary to Defendant Trinity's assertion, the recommended dietary allowance for vitamin B12 is relevant to this case because Plaintiff alleges that Defendant Trinity's meals provide insufficient amounts of vitamin B12; in other words, he alleges that the meals do not meet the recommended dietary allowance.

Plaintiff also submits a copy of a 6-week menu cycle, which is titled "Menu Cycle: Arizona DOC Male," and "Unit Name: Trinity Services Group."  (Doc. 246 at 24.).  This 6-week menu cycle includes meals for 42 days, listing the items in each day's meals and listing the vitamin B12 value for each item.  (Doc. 246-1 at 24–103.)  Defendant Trinity does not dispute that this evidence represents the 6-week menu cycle for male prisoners. (*See* Doc. 248.)  According to Plaintiff's calculations, which Defendant Trinity does not dispute, the recommended dietary allowance of 2.4 µg/day of B12 is met or exceeded on just 18 out of 42 days, or 43% of the time.  (Doc. 246-1 at 4, 110–111.)  Plaintiff submits Defendant Trinity's Response to Interrogatories, in which it stated that "the cycle menu averages served to Plaintiff fully meet all necessary Recommended Dietary Allowances." (Doc. 246-1 at 18, Resp. to Interrog. No. 1.)  But Defendant Trinity does not explain how meeting the recommended dietary allowance for vitamin B12 just 43% of the time would satisfy the necessary requirements for vitamin B12.

In short, there exist questions of fact as to the recommended dietary allowance for vitamin B12 and whether Plaintiff received food adequate in vitamin B12 to maintain his health, i.e., whether he was denied "the minimal civilized measure of life's necessities." *Foster*, 554 F.3d at 812.

### b.      Subjective Prong

Defendant Trinity argues that Plaintiff cannot satisfy the subjective prong because there is no evidence that the meals he received were nutritionally deficient or that

Defendant Trinity was somehow aware of such a risk and disregarded it.  (Doc. 242 at 9–10.)

Whether Plaintiff received nutritionally deficient meals goes to the objective prong, and as discussed above, there is a material factual dispute as to that issue.

In his amended pleading, Plaintiff averred that, with respect to his claim that Defendant Trinity served a diet insufficient in vitamin B12 and he suffered a vitamin B12 deficiency as a result, he submitted a request for administrative relief and appealed that request for relief to the highest level.  (Doc. 13 at 7.)  Defendant Trinity does not dispute that Plaintiff grieved his complaint; however, they do not submit copies of Plaintiff's grievance and appeal.  Consequently, there is a question of fact whether Plaintiff's grievance and appeal put Defendant Trinity on notice that Plaintiff suffered a vitamin B12 deficiency due to the diet served by Trinity.

Moreover, Defendant Trinity has knowledge of its own menus and meals and the nutritional content of those meals.  Donnelly avers that, as the West Region Dietician for Trinity, she specializes in nutritional consultation and she designs, analyzes, and approves the menus served to Plaintiff.  (Doc. 243-1 at 3, Donnelly Decl. ¶¶ 4–5.)  She also avers that she is familiar with the recommended dietary allowances specified by the National Academy of Sciences and established by the NIH.  (*Id.* ¶¶ 12, 14.)  It follows that Defendant Trinity would have knowledge whether its meals meet the recommended dietary allowance for vitamin B12.  If Trinity's meals do not meet the recommended dietary allowance for vitamin B12, a reasonable jury could find that Defendant Trinity was aware of that fact and failed to take any action to remedy it, thereby exhibiting deliberate indifference.  *Cf. Smith v. Fischer*, 500 F. App'x 59, 61–62 (2d Cir. 2012) (summary order) (affirming grant of summary judgment on conditions of confinement claim, explaining that the plaintiff "failed to show facts sufficient to demonstrate that [the defendants] acted with deliberate indifference" where "[i]t is undisputed that prison officials offered [the plaintiff] access to special diets and arranged for him to meet with a registered dietician"); *Powers v. Wash. Dep't of Corrs.*, No. C11-5806 RLB/KLS, 2013 WL 1755790, at *14 (W.D. Wash. March

29, 2013). *report & recommendation adopted*, No. C11-5806 RBL/KLS, 2013 WL 1755787 (W.D. Wash. Apr. 24, 2013) (finding that the defendants responded reasonably to the risk to prisoner health where evidence showed that the defendants corrected the caloric values of the Ramadan meals and, when that was not sufficient, they added supplements to the meals to ensure sufficient calories were provided).

When construing the limited available evidence in Plaintiff's favor, there is a question of fact as to whether Defendant Trinity was aware that its diet was insufficient in vitamin B12 and that Plaintiff suffered a vitamin B12 deficiency as a result, and there is a question of fact as to whether Defendant Trinity was deliberately indifferent to the risk to Plaintiff's health.

## 2.    Policy

A policy is "a deliberate choice to follow a course of action" made by the officials or entity "responsible for establishing final policy with respect to the subject matter in question." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).  A policy can be one of action or inaction. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).  A "custom" for purposes of *Monell* liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. June 19, 2017) (a reasonable jury could conclude that at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amount to a custom or practice of deliberate indifference) (citing *Oviatt*, 954 F.2d at 1478).  But "[t]here is no case law

indicating that a custom cannot be inferred from a pattern of behavior toward a single individual." *Id.* Whether actions by entity officers or employees amount to a custom "depends on such factors as how longstanding the practice is, the number and percentage of officials engaged in the practice, and the gravity of the conduct." *Mi Pueblo San Jose, Inc. v. City of Oakland*, C-06-4094 VRW, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006).

Defendant argues that at no time did it maintain a policy or custom of knowingly preparing meals that were nutritionally deficient. (Doc. 242 at 11.) Defendant asserts that, to the contrary, it maintained a policy and practice of preparing nutritionally adequate meals. (*Id.*)

Defendant relies on its own version of the facts to argue generally that Plaintiff was served a diet that was sufficient in vitamin B12. (*Id.* at 8–9, 11.) The Court has already determined that there is a question of fact as to whether the meals Plaintiff received met the recommended dietary allowance of vitamin B12 and whether he suffered a vitamin B12 deficiency as a result. There is no dispute that the meals at issue were not isolated in nature or duration; rather, the meals were pursuant to Defendant Trinity's menu policy and have been served to Plaintiff for years. Accordingly, there is a question of fact whether Defendant Trinity's policy governing meals allowed a diet insufficient in vitamin B12 to be served and led to a violation of Plaintiff's constitutional rights. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1194–95 (9th Cir. 2002) (whether a policy or custom exists is normally a jury question).

Defendant Trinity does not address the remaining *Monell* elements—whether its policy or custom was deliberately indifferent and whether it was the moving force behind the alleged violation. (*See* Doc. 242.) Therefore, Defendant Trinity fails to meet its initial summary judgment burden as to the claim against it.

### D.   Good Faith Defense

The qualified immunity defense is not available to private parties; however, they can assert a "good faith" defense that closely resembles qualified immunity. *Clement v.*

*City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008); *Mangeac v. Armstrong*, No. CV 08-239-S-BLW, 2009 WL 10713025, at *7 (D. Idaho July 31, 2009) ("[t]his circuit . . . has recognized a good faith defense that shields private defendants from § 1983 liability where they reasonably believed they were acting in conformity with [the] law"). The Ninth Circuit has extended the good faith defense to private entities. *Danielson v. Inslee*, 945 F.3d 1096, 1099–1100 (9th Cir. 2019). The good faith exception applies when the action at issue was authorized by the government and "appeared permissible under local ordinance and state law." *Clement*, 518 F.3d at 1097. The good faith defense "permit[s] private parties to rely on judicial pronouncements of what the law is, without exposing themselves to potential liability for doing so." *Danielson*, 945 F.3d at 1099.

*Danielson* involved Washington state employees who were not members of the Union but who were nonetheless required to pay agency fees to the Union. 945 F.3d at 1097–98. Collection of agency fees was authorized by Washington state law and decades of United States Supreme Court precedent. *Id.* at 1098. But in 2018, the Supreme Court issued a decision holding that mandatory collection of agency fees from objectors violated the First Amendment. *Janus v. Am. Fed'n of State, Cty, & Mun. Emps, Council 31*, 138 S. Ct. 2448, 2486 (2018). The Union immediately stopped collecting agency fees from the non-Union state employees. *Danielson*, 945 F.3d at 1097. Those non-Union state employees then brought suit under § 1983 for violation of their First Amendment rights, and they sought a refund of the agency fees that they alleged had been unlawfully collected from non-Union members. *Id.* at 1098. In dismissing the plaintiffs' claim, the Ninth Circuit applied the good faith affirmative defense; "[b]ecause the Union's action was sanctioned not only by state law, but also by directly on-point Supreme Court precedent, we hold that the good faith defense shields the Union from retrospective monetary liability as a matter of law." *Id.* at 1104.

In its Motion, Defendant Trinity argues that it qualifies for the good faith defense "because nothing in the record suggests that they knowingly allowed Plaintiff to receive nutritionally deficient meals or acted in a subjectively bad faith manner vis-à-vis Plaintiff's

meals." (Doc. 242 at 13.)  Defendant Trinity asserts that because the record shows that the converse is true, summary judgment should be entered based on the good faith defense. (*Id.*)  But Defendant Trinity does not cite to any governmental law or ordinance, or to any court precedent, that sanctioned its actions at the time Plaintiff's claim arose.  Thus, there is no explanation of how the good faith defense would apply in this instance.  Moreover, Defendant Trinity's argument rests on its version of the facts, and the Court has determined that there are material factual disputes as to whether Plaintiff was served a diet that provided a nutritionally sufficient amount of vitamin B12.  Accordingly, the good faith defense is not a basis for summary judgment.

### E. Punitive Damages

Defendant Trinity argues that because its alleged conduct cannot be found to be "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others," summary judgment should be granted as to Plaintiff's punitive damages claim.  (Doc. 242 at 13–14.)

A request for punitive damages is not a separate claim, but rather a request for a particular relief as to Plaintiff's Eighth Amendment claim.  Further, whether punitive damages are warranted is an issue reserved for the jury.  *See Pacific Mut. Life Ins. Co. v. Haslip*, 111 U.S. 1, 16 (1991) (noting that, with respect to punitive damages, "[t]his has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case") (quotation omitted); *Smith v. Wade*, 461 U.S. 30, 48, 54, 56 (1983) ("punitive damages are awarded in the jury's discretion").  A jury may assess punitive damages in a § 1983 action when a defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith*, 461 U.S. at 56.

A reasonable jury could conclude that, in providing a diet insufficient in vitamin B12 for years, Defendant Trinity's conduct was motivated by a "reckless or callous indifference to the federally protected rights of" Plaintiff, thereby warranting punitive

damages.  *Id.*  The request for summary judgment as to punitive damages will therefore be denied.

### F.     Successive Motion for Summary Judgment

A district court has discretion to permit successive motions for summary judgment. *Hoffman v. Tonnemacher*, 593 F.3d 908, 911–12 (9th Cir. 2010).  A successive summary judgment motion is particularly appropriate when there is an expanded factual record.  *Id.* at 911.

The record related to Plaintiff's conditions-of-confinement claim is extremely limited and deficient.  An expanded record may be dispositive of the remaining conditions-of-confinement claim.  At the least, proper summary judgment briefing with additional evidence will serve to flesh out the relevant facts and narrow the issues prior to trial.  The Court will therefore permit the parties to file summary judgment motions within 20 days from the date of this Order.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendant Bautista's Motion for Summary Judgment (Doc. 187) and Defendant Trinity's Motion for Summary Judgment (Doc. 242).

(2)     Defendant Bautista's Motion for Summary Judgment (Doc. 187) is **granted**; Count Two is dismissed with prejudice.

(3)     Bautista is **dismissed** as a Defendant.

(4)     Defendant Trinity's Motion for Summary Judgment (Doc. 242) is **denied**.

(5)     Within **20 days** from the date of this Order, the parties may file new motions for summary judgment.

Dated this 4th day of January, 2023.

James A. Teilborg
Senior United States District Judge