JAL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Anthony Robledo, | No. CV-19-05349-PHX-JAT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Unknown Bautista, et al., | |
| Defendants. | |

Plaintiff Paul Anthony Robledo, who is currently confined in the Arizona State Prison Complex-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendant Trinity Services Group ("Trinity") has filed a Successive Motion for Summary Judgment (the "Successive Motion") as to Plaintiff's Eighth Amendment conditions-of-confinement claim. (Doc. 256.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 258), and he opposes the Motion.[1] (Doc. 259.) Defendant filed a Reply. (Doc. 261.)

---

[1] In his Memorandum of Points and Authorities, Plaintiff contends Defendant Trinity should not have been permitted to file a successive motion for summary judgment. (Doc. 259 at 1.) Plaintiff argues that *Hoffman v. Tonnemacher*, 593 F.3d 908 (9th Cir. 2011), "objectively means" that a successive motion for summary judgment "can be entertained . . . only after a mistrial, not immediately after the denial of the initial [motion for summary judgment]." (*Id.*) Plaintiff is mistaken. In *Hoffman*, the Ninth Circuit observed that Rule 56 of the Federal Rules of Civil Procedure "does not limit the number of motions that may be filed." *Id.* at 911. In addition, the Ninth Circuit recognized that, "in effect, the possibility of summary judgment remains on the table even after a district court has denied a summary judgment motion because that order is 'subject to reconsideration by the court at any time.'" *Id.* (quoting *Dessar v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir. 1995)). The Ninth Circuit explicitly held that district courts have discretion to permit successive motions for summary judgment; its

The Court will grant the Successive Motion for Summary Judgment.

**I.     Background**

In the Third Amended Complaint,[2] as relevant here, Plaintiff alleges that Defendant Trinity has a policy, practice, and custom of providing Plaintiff with a diet that is "far below what is recommended by agencies like the F.D.A." (Doc. 13.) Plaintiff claims that, as a result of the insufficient diet, he was diagnosed with "vitamin B12 deficiency anemia due to dietary causes," requiring biannual blood tests and monthly injections. (*Id.*)

On screening the Third Amended Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment conditions-of-confinement claim in Count Three against Defendant Trinity. (Doc. 14.)

On September 29, 2022, Defendant Trinity filed a Motion for Summary Judgment on the merits of Plaintiff's Eighth Amendment claim. (Doc. 242.) In a January 4, 2023 Order, the Court denied the Motion for Summary Judgment. (Doc. 250 at 21.) First, the Court determined there were questions of fact as to the recommended dietary allowance for vitamin B12 and whether Plaintiff received food adequate in vitamin B12 to maintain his health. (*Id.* at 15.) Second, the Court determined there was a question of fact as to whether Defendant Trinity was aware that its diet was insufficient in vitamin B12 and that Plaintiff suffered a vitamin B12 deficiency as a result. (*Id.* at 17.) Third, the Court determined there was a question of fact whether Defendant Trinity's policy governing meals allowed a diet insufficient in vitamin B12 to be served and led to a violation of Plaintiff's constitutional rights. (*Id.* at 18.) Fourth, the Court rejected Defendant Trinity's argument that it qualifies for a good faith defense. (*Id.* at 19.)

The Court noted that the record related to Plaintiff's conditions-of-confinement claim was "extremely limited and deficient" and proper summary judgment briefing with additional evidence would flesh out the relevant facts and narrow the issues before trial

---

holding was not limited to cases in which there was a mistrial. *Id.*

[2] Plaintiff also asserted a First Amendment mail claim against Defendant Correctional Officer II Bautista. On March 7, 2022, Defendant Bautista filed a Motion for Summary Judgment. (Doc. 187.) In a January 4, 2023, the Court granted Defendant Bautista's Motion and dismissed Count Two and Bautista as a Defendant. (Doc. 250.)

and therefore permitted the parties to file successive summary judgment motions. (*Id.* at 21.)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). . . . .

**III.    Facts**

The relevant facts are largely undisputed. Defendant Trinity is a private entity operating pursuant to a contract with the Arizona Department of Corrections, Rehabilitation and Reentry (ADC). (Def.'s Statement of Facts (DSOF), Doc. 257 at 2 ¶ 4.) Trinity, through its registered dietitians, developed the menu pursuant to which the ADC meals are prepared, based on applicable nutritional standards and the specifications, directives and guidelines provided by ADC concerning daily caloric and nutrient requirements. (*Id.* ¶ 5.)

**A.    Defendant's Facts**

Defendant primarily relies on a Declaration from registered dietitian Laura Donnelly in support of its Motion. Donnelly serves as the West Region Dietitian for Trinity and has held this position since March 29, 2012, on which date Trinity began providing food service to ADC. (Decl. of Laura Donnelly, Doc. 257-1 at 2 ¶ 3.) Donnelly is a Licensed Dietitian registered with the Commission on Dietetic Registration and specializes in the provision of food service and nutritional consultation for correctional institutions and detention facilities. (*Id.* ¶ 4.) As the West Region Dietitian for Trinity, Donnelly is not involved with prescribing prisoner diets or establishing food service policy. (*Id.* ¶ 5.) Donnelly is responsible for, among other things, designing menus that outline nutritionally adequate meals pursuant to the specifications, directives and guidelines of the correctional institutions, detention facilities and government agencies for which Trinity is contracted to provide food service throughout the Western region of the United States, including ADC. (*Id.* ¶ 6.)

In the Declaration, Donnelly avers the following:

ADC offers prisoners a variety of diets, including a standard diet, religious diets, and medical diets. (*Id.* ¶ 10.) Trinity provides food service to ADC in accordance with the policies and procedures outlined in the ADC's Department Order 912, Food Service System; ADC's 912-T-OPS Food Service System Technical Manual; and ADC's Diet Reference Manual. (*Id.* ¶ 11.)

1        The menus provided to prisoners, including those provided to Plaintiff, meet or exceed the recommended nutritional standards specified by the Recommended Dietary Allowances from the National Academy of Sciences (1989), and contract parameters. (*Id.* ¶ 12.) Specifically, sources of B12 included on the ADC menus include milk, chicken, turkey, beef, eggs, potatoes, enriched grains, and fats. (*Id.* ¶ 13.) Vitamin B12 is a water-soluble vitamin derived from, inter alia, animal products. (*Id.* ¶ 14.) After being ingested, any excess B12 is stored in the body for later use. (*Id.*) It is therefore not required that a person receive a minimum amount of vitamin B12 each day, instead making it more accurate to calculate the average amount of B12 ingested over time. (*Id.* ¶ 15.)

Vitamin B12 deficiency can be caused by any number of dietary, genetic or environmental factors. (*Id.* ¶ 16.) Some people are unable to sufficiently absorb the B12 contained in their diet, and others lack "intrinsic factor," a protein required for B12 absorption. (*Id.*) One condition that results in a lack of intrinsic factor is pernicious anemia, which is an auto-immune disease that prevents the body from absorbing B12 from food, sometimes requiring that persons receive their B12 by other means, such as injections. (*Id.*)

Plaintiff receives three meals a day on Monday through Friday, excluding visitation holidays and weekends, which consist of a breakfast, lunch, and dinner. (*Id.* ¶ 18.) On visitation holidays and weekends, he receives two meals per day consisting of a combined breakfast/lunch and an enhanced dinner. (*Id.*) If consumed as prepared, the menu provides him with approximately 2,700 calories per day, which exceeds the approximately 2,500 daily calories and 2.0 mcg/day of B12, recommended for a sedentary adult male of average build, like Plaintiff, under the standards established by the National Academy of Sciences - National Research Council (NAS-NRC), which serve as the national standard for nutrient recommendations. (*Id.*)

FDA and CDC standards do not apply in group settings, and neither these standards nor NIH standards require that Plaintiff's diet contain 2.4 mcg of B12 per day. (*Id.* ¶ 19.) The NAS-NRC Estimated Average Requirement (EAR) for vitamin B12 ranges from 0.7

mcg /day in early childhood to 2.0 mcg/day for adult males like Plaintiff.  (*Id.* ¶ 20; Doc. 257-1 at 90.)  EARs meet the requirements of 50% of population groups, and the percent of these groups failing to meet their EAR is used as an indicator of the adequacy of intake.  (Donnelly Decl. ¶ 20.)  The goal should be for approximately 95% of each life-stage group to consume their EAR, and fortification programs should be designed to fill the gap between usual intake and the EAR.  (*Id.*)  Recommended Dietary Intakes meet the needs of 97.5% of the population.  (*Id.*)  Per standard nutritional analysis protocol, Plaintiff received the appropriate seven-day average of 2.0 mcg/day, calculated over a 6-week period of time, which is a nutritionally adequate diet for incarcerated adults.  (*Id.* ¶ 21.)

As with any menu designed for congregate feeding, some of the daily nutrient levels for the meals outlined under the Regular Diet menu are slightly higher or slightly lower than the NAS-NRC's recommended daily allowances (RDA).  (*Id.* ¶ 22.)  However, minimal deviations from the RDA are both acceptable and of negligible consequence to the nutritional adequacy of the meals outlined by the Regular Diet menu because the NAS-NRC guidelines specify average intakes over several days and recognize that it is virtually impossible and biologically unnecessary to design a single-day meal plan that satisfies all of the RDA.  (*Id.*)  The NAS-NRC recommends designing menus for congregate feeding so that the RDA are generally satisfied over time.  (*Id.*)

**B.     Plaintiff's Facts**

Plaintiff alleges that the meals provided by Defendant Trinity are lacking in nutrients, particularly vitamin B12, and are inadequate to maintain health.  (Doc. 13 at 7.)  Plaintiff asserts that, as a result of the insufficient diet, he has developed vitamin B12 deficiency anemia.  (*Id.* at 9.)

Plaintiff's prison medical records show that in October 2019, he was diagnosed with "vitamin B12 deficiency anemia, unspecified," and in November 2019, he was diagnosed with "other dietary vitamin B12 deficiency anemia," which is documented as "due to dietary cause" and is listed as a chronic condition.  (*Id.* at 16.)  Plaintiff must undergo blood tests every six months, and he receives monthly vitamin B12 shots. (Doc. 246-1

¶ 11(b); Doc. 243-2 at 5, Pl. Dep. 78:1–6, May 5, 2022.) Plaintiff avers that he suffers lethargy. (Doc. 246 at 4.) The monthly vitamin B12 shots, which he has received since November 2019, improve his symptoms for two to three weeks, until they wear off. (Doc. 243-2 at 5, Pl. Dep. 79:21–80:7, 80:20-25.)

## IV. Discussion

### A. Legal Standard

To prevail on a claim against Defendant Trinity as a private entity serving a traditional public function, Plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) Defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). If the Court determines Plaintiff was not deprived of a constitutional right, the Court need not consider the remaining factors set forth in *Mabe*.

### B. Analysis

#### 1. Eighth Amendment Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must meet a two-part test. First, the plaintiff must make an "objective" showing that the alleged deprivation is "sufficiently serious." *Farmer*, 511 U.S. at 834. To be sufficiently serious to form the basis of an Eighth Amendment violation, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (citing *Rhodes*, 452 U.S. at 347).

Second, the plaintiff must make a "subjective" showing that the prison official acted with a "sufficiently culpable state of mind"; that is, that the defendant acted with deliberate indifference to the plaintiff's health or safety. *Farmer*, 511 U.S. at 834. To show deliberate

1 indifference, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to prisoner health or safety. *Id.* at 837. To satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's health or safety. *Id.* at 835.

"Adequate food is a basic human need protected by the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996). Prisoners must be provided food that is nutritionally adequate to maintain health. *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Whether food is sufficient to maintain health is often determined by its nutritional and caloric values. *See Florer v. Bales-Johnson*, 752 F. Supp. 2d 1185, 1200–01 (W.D. Wash. 2010) (finding that, in light of the prisoner-plaintiff's body weight and caloric needs, the prison's kosher meals were sufficient to maintain his health).

### 2. Objective Prong

The available evidence indicates that in October 2019, Plaintiff was diagnosed with "vitamin B12 deficiency anemia, unspecified," and in November 2019, he was diagnosed with "other dietary vitamin B12 deficiency anemia," which is documented as "due to dietary cause" and is listed as a chronic condition. The evidence indicates that Plaintiff must undergo blood tests every six months, and he receives monthly vitamin B12 shots. Plaintiff also suffers lethargy.

In ruling on Defendant's first Motion for Summary Judgment, the Court determined that, based on the evidence showing that Plaintiff suffers lethargy and requires monthly vitamin B12 shots, a reasonable jury could find that the diet provided by Defendant Trinity was inadequate to maintain sufficient vitamin B12 levels. (Doc. 250 at 13.) The Court made that determination because the record did not contain any evidence regarding the actual nutritional content of Plaintiff's diet. (*Id.*)

In its Successive Motion for Summary Judgment, Defendant has presented evidence of the nutritional content of the meals provided to Plaintiff, including the levels

of vitamin B12. According to the Donnelly Declaration submitted in support of Defendant's Successive Motion, sources of B12 included on the ADC menus include milk, chicken, turkey, beef, eggs, potatoes, enriched grains, and fats. If consumed as prepared, the menu provides Plaintiff a weekly average of 2.1–2.5 mcg/day of B12. (Donnelly Decl. ¶ 18.) As noted above, Donnelly declares that the menus provided to prisoners, including those provided to Plaintiff, meet or exceed the recommended nutritional standards specified by the Recommended Dietary Allowances from the National Academy of Sciences (1989), and contract parameters. (*Id.* ¶ 12.)

Plaintiff disputes that the ADC menus provide sufficient vitamin B12. Plaintiff relies on an April 6, 2021 "Vitamin B12 Fact Sheet for Health Professionals," published on the National Institutes of Health website. (Doc. 246-1 at 113.) According to the Fact Sheet, a Recommended Daily Allowance is the "[a]verage daily level of intake sufficient to meet the nutrient requirements of nearly all healthy individuals" and is often used to plan nutritionally adequate diets for individuals. (*Id.*) The Fact Sheet specifies that the RDA for vitamin B12 for adult males is 2.4 mcg, but acknowledges that other guidelines exist, including the EAR. (*Id.*) For example, Adequate Intake, or AI, for adult males is defined as a level of intake "assumed to ensure nutritional adequacy" and is "established when evidence is insufficient to develop an RDA." (*Id.*) The Fact Sheet does not specify the AI for vitamin B12.

Even accepting as true that the RDA for adult males is 2.4 mcg, it does not necessarily follow that a diet that provides 2.0 mcg of vitamin B12 amounts to deliberate indifference to Plaintiff's health and well-being. The RDA is a recommendation; nothing in the NIH Fact Sheet specifies that the *minimum* daily requirement to maintain health for adult males is 2.4 mcg. Indeed, the Fact Sheet recognizes that RDAs are distinct from EARs, and it does not indicate that the *EAR* for vitamin B12 is 2.4 mcg. Rather, the evidence shows that the EAR for B12 for adult males is 2.0 mcg. The evidence also shows that the ADC meals average over 2.0 mcg of B12 weekly. Accordingly, the menus provided to prisoners meet or exceed the EARs and recommended nutritional standards;

thus, the meals satisfy the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

On this record, Plaintiff cannot establish the objective prong of the Eighth Amendment analysis.

### 3. Subjective Prong

The Supreme Court has held that if either the objective or subjective component of the conditions-of-confinement analysis is not established, the Court need not address the other component. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Because the Court concludes Plaintiff has not established the objective component, the Court need not address the subjective component.

### C. Conclusion

Plaintiff fails to create a genuine issue of material fact that his diet contains inadequate amounts of vitamin B12 and that his diet deprives him of the minimal civilized measure of life's necessities. Thus, Plaintiff's Eighth Amendment claim against Defendant Trinity fails as a matter of law.

For the foregoing reasons, the Court will grant Defendant's Successive Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Successive Motion for Summary Judgment (Doc. 256).

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

(2) Defendants' Successive Motion for Summary Judgment (Doc. 256) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 12th day of September, 2023.

James A. Teilborg
Senior United States District Judge